SHIPMAN & GOODWIN LLP
Michael T. Conway, Esq. SBN 164004
400 Park Avenue, Fifth Floor
New York, New York 10022
Telephone: (212) 376-3010
Facsimile: (212) 376-3024
mconway@goodwin.com

*Attorneys for Defendants
Apiriliaco Limited d/b/a HoneyDaddy.com, "East Feneridou"
and E.C.A. Kartoir Secretarial Ltd.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REFLEX MEDIA, INC, a Nevada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY CHAN; PYLON MEDIA GROUP, INC.; APIRILIACO LIMITED d/b/a HoneyDaddy.com; EAST FENERIDOU; E.C.A. KARTOIR SECRETARIAL LTD.; and Does 1-10, inclusive,<br><br>Defendant. | Case No. 8:16-cv-795-JFW-JEM<br><br>**DECLARATION OF**<br>**VASILIS ZERTALIS** |

I, Vasilis Zertalis, hereby declare pursuant to section 1746 of title 28 of the United States Code that:

1. I am the Chief Executive Offer and Director of Prospectacy Ltd., the parent company of E.C.A. Kartoir Secretarial Ltd. ("Kartoir"). Kartoir serves as the corporate secretary for Apiriliaco Limited[1] ("Apiriliaco") (collectively, with the named defendant, East Feneridou[2], "Defendants"). Companies in Cyprus often have corporate bodies rather than individuals serve

---

[1] Although the caption of this action states that Apiriliaco is doing business as "HoneyDaddy.com", it is not filed any DBA and is not doing, and has not done, business under such name.

[2] There is no person known to me named "East Feneridou". To the extent this is intended to mean Anatoli Feneridou (Anatoli is Greek for east), as stated in greater detail below, Anatoli Feneridou was a former director of Defendants. As such, counsel has only been retained on behalf of "East Feneridou" to the extent the Court considers such unknown person to be the same as Anatoli Feneridou. Defendants do not waive any rights relating to the foregoing.

1

as corporate secretaries, a practice that is permitted by Cyprus law and is different from corporate practice in the United States.

2. The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto.

3. I was specifically asked by counsel to clarify the circumstances surrounding Defendants' alleged default in appearing in the within action.

4. I first became aware of the instant action upon receipt of Plaintiff Reflex Media, Inc.'s ("Plaintiff") Notice of Lodging filed March 10, 2017 (Doc. 38) (the "Notice of Lodging").

5. The Notice of Lodging was sent to Defendants in Cyprus via FedEx to an address other the Defendants' principal place of business and was received by me on or about March 20, 2017. These documents were provided to me at my company which is the parent company of Kartoir.

6. Upon receipt and review of the Notice of Lodging, I was able to determine the importance of the documents due to my prior experience working in the United States as a licensed certified public accountant in New York. The contents and important of the legal papers emanating from the United States would not be known to other officers, directors, and employees of Defendants, especially when such documents were provided only in English and not sent via registered post or mail.

7. Shortly thereafter, on March 20, 2017, I contacted counsel in the United States to discuss the contents of the document and this pending action.

8. The version of the Notice of Lodging I received did not include any indication that it was filed with the Court in that it did not bear any markings on the top border of the page. Accompanying the Notice of Lodging was a document which did appear to have been previously filed[3] and was titled "Application for Entry of Default Judgment Against Defaulted Defendants Apiriliaco Limited d/b/a HoneyDaddy.com; East Feneridou; and E.C.A. Kartoir Secretarial Ltd." which stated it was filed on February 21, 2017 (the "Application") [Doc. 35].

---

[3] I have since been advised by counsel that the Notice of Lodging was filed on March 10, 2017 [Doc. 38].

9. My understanding from the face of the Application was that it was scheduled to be heard by the Court on either March 20, 2017 or March 27, 2017. The cause of my confusion is the multiple dates listed in the document in various locations. Specifically, it states next to the caption "Date: March 20, 2017" and then in the body of the document states "PLEASE TAKE NOTICE that on March 27, 2017" the matter will be heard.

10. My initial belief was that Defendants would have until March 27, 2017 to oppose or otherwise respond to the document received.

11. I have subsequently been advised by counsel that the Application was granted by Order of the Court dated March 7, 2017 [Doc. 36] and that Judgment was entered on March 14, 2017 [Doc. 39] in the amount of $2,044,278.21 against Defendants, notwithstanding the hearing dates set forth on the face of the Application.

12. I have further been advised by counsel that the basis for granting default judgment against Defendants and was the alleged failure of Defendants to timely appear in the action after purported service of the Summons and Complaint, which service is claimed to have been attempted on August 5, 2016 via Federal Express pursuant to the Hague Convention.

13. I am advised by my attorneys that the proofs of service filed by Plaintiff on August 12, 2016 (Docs. 19-21) state that the Summons and Complaint were served on Defendants by Federal Express on August 5, 2016, which packages were claimed to have been signed by "MARIOS" on behalf of Defendants at the address 11 Souliou, Vamiko 5, Floor 1, Flat 14, Strovolos 2018 Cyprus.

14. There is no one employed by Defendants named "MARIOS" and there is no one named "MARIOS" authorized to accept service on behalf of Defendants.

15. Further, the place where the service allegedly took place and as stated in the proofs of service, 11 Souliou, Vamiko 5, Floor 1, Flat 14, Strovolos 2018 Cyprus, is not Defendants' principal places of business. This is also not Feneridou's place of residence.

16. With respect to the default judgment entered against "East Feneridou", there is no person named East Feneridou who works, or worked, for either of the corporate Defendants.

Further, I am advised that because the person against whom service was sought is an individual, substitute service by Federal Express at the alleged place of business of "East Feneridou" alone would have been insufficient and an additional mailing would have been required to have been addressed to "East Feneridou" at that individual's residence, which is not alleged by Plaintiff to have occurred. There was a person named Anatoli Feneridou who previously worked for Defendants; however, she ceased working there prior to the commencement of this law suit.

17. Additionally, there is no indication on the proofs of service that any commencement documents purported to have been served were translated from English and no one at the location where service was purportedly made would have been able to decipher the nature of the documents or translate them, even had they been received, let alone determine the legal importance of them.

18. Not only were Defendants not afforded the opportunity to appear in the action by having not been properly served, but they were also deprived of the ability to contest their default prior to the entry of default and to challenge the purported evidence submitted to the Court in support of the Application, both as to the substance of the Plaintiff's claim and as to the alleged damages purportedly suffered by Plaintiff.

19. Had Defendants been afforded the ability to defendant themselves, it would have been apparent that they have a meritorious defense to the allegations in the Complaint. It is my understanding that the basis for Plaintiff's claims is alleged trademark infringement for Defendants' use of the words "Seeking" and "Arrangements". Despite the use of these words as a display name on limited e-mail advertisements, it was never the intent to use the words together as a trademark associated with Apiriliaco's services. Certainly, any potential confusion that could have conceivably arose to consumers, of which I am not aware, was not willful and the use of the display name was not done for the purpose of gaining an unfair competitive advantage, to seek any benefit from Plaintiff's trademark and/or reputation, or with the intent to otherwise harm Plaintiff.

20. Further, as stated above, Kartoir is only a service agency and would not have been involved in business activities such as e-mail advertisements, marketing, web content, or otherwise. Additionally, Feneridou, who ceased working for the corporate Defendants prior to the commencement of this action, was never more than an employee and would not have been involved in her individual capacity in e-mail advertisements, marketing, web content, or otherwise. Feneridou, to the best of my knowledge, has never visited California nor does she have any direct contacts with the United States at all. L

21. Likewise, the Corporate Defendants have never conducted business in the United States, they own no property in California, have never owned any property in California, have no offices, and no personnel in California, or anywhere else in the United States. At best, only a small percentage of Apiriliaco's customers may have a connection to California. The only conceivable connection to California is via the internet (websites and e-mail advertisements). There has been no directing marketing by Defendants purposefully directed to California residents.

22. I understand that the lawsuit is still ongoing and no prejudice will be suffered by Plaintiff by the Court allowing the Defendants to participate fully in this case.

I declare under the penalties of perjury that the foregoing is true and correct. Executed in Nicosia, Cyprus, this 3 day of April, 2017.

_____
Vasilis Zertalis